UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CRAIG MILLER and
NANCY MILLER,

      Plaintiffs,

v.                                           Case No. 06-C-1021

SAFECO INSURANCE COMPANY
OF AMERICA,

      Defendant.

**DECISION AND ORDER ON PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT**

**I. PROCEDURAL AND FACTUAL BACKGROUND**

On September 28, 2006, the plaintiffs, Craig and Nancy Miller ("the Millers"), commenced this action by filing a complaint in the United States District Court for the Eastern District of Wisconsin. The Millers request declaratory relief and assert numerous claims against the defendant, Safeco Insurance Company of America ("Safeco"), including: breach of contract, breach of implied covenant of good faith and fair dealing, and bad faith.

Currently pending before the court is the plaintiffs' motion for partial summary judgment. Specifically, the Millers first ask the court to find that the Safeco insurance policy purchased by the Millers initially granted coverage for the water and mold damage to the property located at 3232 North Summit Avenue, Milwaukee, Wisconsin. Second, the Millers ask the court to find that the defendant may not raise any policy exclusions in its defense because the plaintiffs were not notified

1

of such exclusions before the water and mold damage was discovered.[1] The motion is fully briefed and ready for resolution. For the reasons which follow, the plaintiffs' motion for partial summary judgment will be denied in part and granted in part.

In accordance with the provisions of Civil Local Rule 56.2(a) (E.D. Wis.), the plaintiffs' motion for partial summary judgment was accompanied by a set of proposed findings of fact. A review of the plaintiffs' proposed findings and the defendant's response thereto reveal that the following are material and (except where noted) undisputed facts that are relevant to the disposition of the plaintiffs' motion for partial summary judgment.

On June 30, 2005, Safeco issued an insurance policy to the Millers ("the Safeco policy"), insuring the property located at 3232 North Summit Avenue, Milwaukee, Wisconsin ("the residence"). (PPFOF ¶¶ 5-6.) On July 1, 2005, the Millers closed on their purchase of the residence, and the Safeco policy went into full force and effect. (PPFOF ¶¶ 7-8.) In early August of 2005, the Millers received their first copy of the policy along with a letter from Safeco dated July 31, 2005. (PPFOF ¶ 12.)

Sometime either before or after the Safeco policy went into effect, the Millers discovered water and mold damage to the residence. The parties disagree as to when the Millers discovered the water and mold damage. The Millers allege that they first discovered the damage and resulting complications while remodeling the residence in early July–*after* the Safeco policy went into effect. (PPFOF ¶¶ 9-11.) Safeco contends that this was not the Millers' first notice of the water and mold

---

[1] The introduction to the plaintiffs' brief only asks the court to determine "whether the insurance contract initially granted coverage for the loss suffered by the Millers." (Pls.' Br. 2.) However, the plaintiffs then dedicate almost half of their discussion section to the issue of whether the defendant is precluded from raising any relevant policy exclusions. The court will address both issues as both were fully briefed by the parties.

2

damage, but that the Millers in fact were first notified of the damage on June 3, 2005 during the course of a routine home inspection–*before* the Safeco policy went into effect. (DPFOF ¶¶ 3,6.) For the limited purpose of this partial summary judgment motion, the Millers do not dispute Safeco's contention that the water and mold damage *existed* before the Safeco policy took effect (Pls.' Br. 6; Halloin Aff. Ex. B); however, the Millers continue to assert that they did not *discover* the damage until after the policy period began (PPFOF ¶¶ 9-11; Pls.' Br. 6).

On or about November 4, 2005, counsel for the Millers filed a claim for the repair of the water damage, ensuing and resulting cause losses, toxigenic mold, and the costs associated with the loss of use of the residence. (PPFOF ¶ 18.) On or about November 22, 2005, Safeco acknowledged receipt of the Millers' claim for losses at the residence. (PPFOF ¶ 22.) On April 17, 2006, Safeco sent the Millers a letter denying them coverage for the damage. (PPFOF ¶ 24; DPFOF ¶ 24.) As previously stated, the Millers filed a complaint against Safeco on September 28, 2006.

## II. SUMMARY JUDGMENT STANDARDS

A district court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note to 1963 amendment). "Summary judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting

3

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing a properly supported summary judgment motion "may not rest upon the mere allegations or denials of the adverse party's pleading" but rather must introduce affidavits or other evidence to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). To state it differently, "[a] party will be successful in opposing summary judgment only when they present definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.,* 233 F.3d 432, 437 (7th Cir. 2000) (quoting *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997)).

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (quoting *Anderson,* 477 U.S. at 255). "'In the light most favorable' simply means that summary judgment is not appropriate if the court must make 'a choice of inferences.'" *Draghi v. County of Cook*, 184 F.3d 689, 691 (7th Cir. 1999) (quoting *Smith*, 129 F.3d at 425). "The evidence must create more than 'some metaphysical doubt as to the material facts.'" *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001) (quoting *Johnson v. Univ. of Wis.-Eau Claire*, 70 F.3d 469, 477 (7th Cir. 1995)). A mere scintilla of evidence in support of the nonmovant's position is insufficient. *Id.* (citing *Anderson*, 477 U.S. at 252).

4

Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### III. DISCUSSION

**A. Issues of fact preclude the granting of partial summary judgment for the plaintiffs on the question of whether the Safeco policy initially grants coverage for the water and mold damage to the residence.**

The plaintiffs ask the court to interpret specific terms in the Safeco policy. In interpreting contracts, such as insurance policies, a court seeks to "determine and give effect to the intent of the contracting parties." *Am. Family Mut. Ins. v. Am. Girl, Inc.*, 2004 WI 2, ¶23, 268 Wis. 2d 16, 673 N.W.2d 65 (citing *Wis. Label Corp. v. Northbrook Prop. & Cas. Ins.*, 2000 WI 26, ¶23, 233 Wis. 2d 314, 607 N.W.2d 276). When interpreting insurance policies, the policies should be "construed as they would be understood by a reasonable person in the position of the insured." *Id.* (citing *Kremers-Urban Co. v. Am. Employers Ins.*, 199 Wis. 2d 722, 735, 351 N.W.2d 156, 163 (1984)). A term is considered ambiguous if it is susceptible to more than one reasonable interpretation. *Cardinal v. Leader Nat'l Ins.*, 166 Wis. 2d 375, 383, 480 N.W.2d 1, 7 (1992). "Whatever ambiguity exists in a contract is resolved in favor of the insured." *Wis. Elec. Power Co. v. Cal. Union Ins.*, 142 Wis. 2d 673, 677-78, 419 N.W.2d 255, 257 (Ct. App. 1987).

When construing insurance policies, Wisconsin courts proceed through a three-step analysis. *Am. Girl, Inc.*, 268 Wis. 2d 16, ¶24. First, the court inspects the insured's claim to "determine whether the policy's insuring agreement makes an initial grant of coverage." *Id.* Second, provided that the claim "triggers the initial grant of coverage," the court reviews the policy's exclusions to

5

determine whether any of them preclude coverage of the present claim. *Id.* Third, if a particular exclusion applies, the court then examines whether there is an exception that could reinstate coverage. *Id.*

A claim for benefits under an insurance policy gives rise to a shifting burden of proof. *Kozlik v. Gulf Ins.*, 2003 WI App 251, ¶8, 268 Wis. 2d 491, 673 N.W.2d 343. The insured has the initial burden of proving that the loss falls within the policy's broad grant of coverage. *Id.* Then the burden shifts to the insurer to prove that an exclusion precludes coverage for the loss. *Id.*

In their motion for partial summary judgment, the Millers ask the court to address the first step of the Wisconsin analysis and determine "whether the [Safeco policy] initially granted coverage for the loss suffered by the Millers." (Pls.' Br. 2.) The Millers assert that they have met their burden of proving an initial grant of coverage under the policy by establishing: "(1) that water and mold damage is an 'occurrence' under the Policy; and (2) that the 'occurrence' took place during the Policy Period." (Pls.' Br. 7). The court finds inaccurate the Millers' claim that establishing water and mold damage as an occurrence commands an initial grant of coverage for property damage under the Safeco policy. The Millers' reliance on the word "occurrence" is misplaced as the word is found in Section II of the policy, which addresses liability coverages, and is not found in Section I of the policy, which addresses the property loss at issue. Further, since a question of fact still exists as to whether the loss to the residence occurred during the policy period, the Millers have not demonstrated that the policy initially granted coverage for the residence's loss as matter of law. Therefore, the Millers' motion for partial summary judgment on this particular issue will be denied.

> 1. *A court finding that water and mold damage is an "occurrence" would not establish an initial grant of coverage for the damage to the residence.*

The Millers seek to recover damages for the loss to the residence caused by water and mold.

6

Such a recovery is addressed under the Safeco policy in Section I–Property Coverages. Section I of the policy explicitly and exhaustively lays out property damages that are covered and excluded by the policy. Nowhere in Section I does the policy limit property coverage to property damage caused by an "occurrence" as is asserted by the Millers. In fact, the word "occurrence" appears nowhere within the property coverages section.

To the contrary, Section II of the Safeco policy, addressing liability coverages, does limit coverage for claims against the insured to those for "bodily injury or *property damage caused by an occurrence* to which [the policy] applies." (emphasis added). However, because the Millers seek recovery for *property damage* done to the residence and do not seek recovery for *liability damage* resulting from a claim against them, Section II of the Safeco policy is inapplicable. Therefore, the Millers cannot establish an initial grant of coverage under the policy by establishing that water and mold damage is an "occurrence."

> 2. *The Millers do not otherwise establish an initial grant of coverage for the property damage to the residence on motion for summary judgment because a question of fact still remains as to whether the damage constitutes a "loss[] occurring during the policy period."*

The Millers may still succeed on their motion for partial summary judgment if they are able to establish an initial grant of coverage as a matter of law under Section I of the Safeco policy. However, before assessing coverage under Section I, the preamble to the Safeco policy requires that all losses under the policy, regardless of whether they are property losses or liability losses, "occur[] during the policy period." Accordingly, the Millers must first demonstrate that the loss to the residence occurred during the policy period before attempting to establish coverage under Section I. Because a question of fact exists as to when the loss to the residence actually occurred, the court cannot determine as a matter of law whether the loss occurred during the policy period, and therefore,

7

the motion for partial summary judgment as to this particular issue must be denied.

The plaintiffs are correct in asserting that Wisconsin has adopted the "continuous trigger" or "triple trigger" theory to determine the exact date of harm in cases where ongoing exposure to a harmful substance makes the exact date of harm uncertain. *See Soc'y Ins. v. Town of Franklin*, 2000 WI App 35, ¶8, 233 Wis. 2d 207, 607 N.W.2d 342. The "triggering" of a policy means that there is potential coverage under the policy. *Id.* An injury or loss occurring during the policy period triggers coverage. *Id.* Under the continuous trigger theory an injury occurs continuously from exposure until manifestation. *Id.*

This court can find no Wisconsin case, and the parties have not provided one, defining the word "manifestation" as it is used in accordance with the continuous trigger theory. However, other courts have defined manifestation to mean when the injury or loss "becomes apparent." Martin J. McMahon, *Event Triggering Liability Insurance Coverage as Occurring within Period of Time Covered by Liability Insurance Policy where Injury or Damage is Delayed–Modern Cases*, 14 A.L.R.5th 695, (stating that under "the triple or continuous trigger rule []damage occurs . . . at the time the damage first becomes apparent . . . ."). This definition is consistent with the common meaning of the word, and therefore, the court finds the definition useful in determining whether the water the mold damage "manifested" during the policy period.

To illustrate the continuous trigger approach, the plaintiffs cite *Wisconsin Electric Power Company v. Fornia Union Insurance* ("*WEPCo*"), 142 Wis. 2d 673, 419 N.W.2d 255 (Wis. App. 1987). In *WEPCo*, Cal Union, the insurer/defendant, argued that it was exempt from providing coverage for the injury in question because the harm had already begun before the insured/plaintiff entered into the Cal Union insurance contract. *Id.* at 679, 419 N.W.2d at 257. The court rejected Cal

8

Union's argument and held that under the continuous trigger approach Cal Union's liability was triggered "[s]ince the occurrence was . . . 'happening' during the period of Cal Union's insurance . . . ." *Id.* at 681, 419 N.W.2d at 258. The court held that "[a] latent injury, unknown and unknowable to [the insured] at the time it purchased insurance, must, at least, be covered by an insurer on the risk at the time it manifests itself. Any other result would violate very reasonable expectations of [the insured]." *Id.* at 680, 419 N.W.2d at 257.

Safeco argues that the Cal Union policy is distinguishable from the Safeco policy because the Cal Union policy did not explicitly contain the language "during the policy period" or otherwise imply that a loss must occur during the policy period. In so arguing, Safeco reads the Cal Union policy too narrowly, as the Cal Union policy explicitly states that "the insurance applies only to occurrences or accidents which happen *during the period of this insurance* . . . ." *Id.* at 679, 419 N.W.2d at 257 (emphasis added). The court concludes that the Cal Union policy language is sufficiently similar to the Safeco policy language to render *WEPCo* and the continuous trigger approach applicable to these proceedings.

For the purposes of this partial summary judgment motion, all parties agree that exposure in this instance occurred at some time before the Safeco policy went into effect. The parties disagree, however, as to at what time the loss manifested. While the Millers state in their motion that "[t]here is no dispute that [they] were unaware of [the water and mold] damage until after they had purchased the home, moved in and began routine remodeling work," (Pls.' Br. at 1), Safeco has provided the court with evidence suggesting that the Millers may have been aware of the damage prior to that time (Def.'s Br. 2-6). Under the continuous trigger theory and precedent laid out in *WEPCo*, if the water and mold damage to the residence did not manifest, in other words, the loss was not apparent, until

9

after the policy went into effect on July 1, 2005, the loss "occurred during the policy period" and Section I of the Safeco policy is applicable.

Safeco contends that a home inspection report requested and received by the Millers prior to July 1, 2005 is evidence that the water and mold damage was apparent to the Millers prior to the beginning of the policy period. The report notes evidence of corrosion, condensation, leaks, and water damage throughout the home, a torn membrane on the corner of the roof, and suggests to the Millers that they "[b]uild up the grade around the foundation for proper water disbursement away from the foundation of the house in order to avoid water penetration/pressure on foundation walls." Safeco states that, upon receiving the home inspection report, the Millers submitted an Amendment to the Offer to Purchase, requesting that the seller either reduce the purchase price to $380,000.00 or to escrow $12,000.00 at closing for repairs. Safeco contends that the Millers made these requests because they were concerned about the condition of the home after receiving the home inspection report–suggesting that the damage manifested before the Safeco policy went into effect.

While the Millers contest Safeco's allegations that the water and mold damage manifested before the policy period began on July 1, 2005, the court is persuaded that Safeco has demonstrated that a genuine issue of fact exists as to when the water and mold damage was apparent to the Millers. Construing all facts in this proceeding in the light most favorable to Safeco, the nonmoving party, as the court must do in a motion for summary judgment, the court finds a question of fact exists as to whether the loss to the residence occurred during the policy period. Safeco has produced evidence in the form of the home inspection report and the amended offer to purchase, suggesting that the loss was apparent to the Millers, and therefore, that the loss had manifested before the policy period had begun. Such evidence is not a "mere scintilla," and the court holds that it is sufficient to create a

10

question of fact, which precludes the granting of summary judgment on the question of whether there was an initial grant of coverage under the Safeco policy.

**B. Safeco is precluded from raising any of the Safeco policy's potentially relevant exclusions because Safeco did not provide a copy of the policy to the Millers before the water and mold damage occurred.**

The Millers also ask the court to hold that Safeco has not and cannot meet its burden of showing that a policy exclusion prevents coverage. The court need not do so because the plaintiffs have not yet met their initial burden of proof, establishing that a loss falls within the policy's broad grant of coverage; therefore, the defendant is not yet obligated to establish the existence of any applicable exclusions. *See Kozlik*, 268 Wis. 2d 491, ¶8. However, the court concludes that the Millers are correct in asserting that because Safeco did not provide the Millers with a copy of the Safeco policy before the loss to the residence occurred, Safeco is precluded from raising any of those exclusions should the Millers, in the future, succeed in establishing an initial grant of coverage. Accordingly, the Millers' motion on that particular issue will be granted.

Wisconsin courts have held that insurers may not use policy exclusions to deny coverage where the insured is not informed of such exclusions before the loss happens. *Id.,* ¶15. In *Kozlik v. Gulf Insurance Company*, the plaintiff rented a vehicle and, at the time of the rental, purchased personal accident insurance that included accidental death benefits. *Id.,* ¶4. The plaintiff was not given a copy of the insurance policy at the time of purchase, and thus, was not informed that the particular policy contained an alcohol exclusion. *Id.* The plaintiff was subsequently killed while driving the vehicle while intoxicated. *Id.,* ¶5. The insurance company attempted to deny coverage on the basis that the policy contained an alcohol exclusion. *Id.* The *Kozlik* court rejected the insurance company's argument and held that "an insurer may not deny coverage based on limitations

11

or exclusions in a policy, even if clearly stated, where the insured was not otherwise informed of such provisions." *Id.,* ¶15. The court noted that "[p]urchasers of insurance policies . . . commonly rely on the assumption that they are fully covered by the insurance that they buy." *Id.* It would, therefore, "be unjust to permit an insurance company to accept premiums and then deny liability based on an exclusion of which the insured was not aware because the insurance company had not informed him or her of the exclusion or given him or her the means to ascertain its existence." *Id.*

Like the plaintiff in *Kozlik*, the Millers were not informed of limitations and exclusions in the Safeco policy before their loss occurred. The Millers purchased the residence on July 1, 2005, and the Safeco policy went into full force and effect at that time. While the parties dispute when the damage was discovered, it is clear that the Millers' loss was discovered, at the latest, within the first two weeks of July 2005. However, the Millers did not receive a copy of the Safeco policy until the first week of August 2005–at least two weeks after the latest the water and mold damage was arguably discovered. Accordingly, Safeco cannot rely on the policy exclusions to deny the Millers' claim because the Millers were not properly notified of any exclusions to the policy.

Safeco raises several arguments in an attempt to persuade the court that the Wisconsin Court of Appeal's decision in *Kozlik* does not apply: (1) that *Shannon v. Shannon*, 150 Wis. 2d 434, 442 N.W.2d 25 (1989), prohibits the use of estoppel in insurance contracts when such use will expand the scope of coverage; and (2) that *Kozlik* is factually distinguishable from the proceeding at hand and therefore inapplicable. The court will address each argument in turn.

Safeco first contends that *Shannon* prohibits the use of estoppel in this proceeding. In *Shannon*, a three-year-old girl brought suit against her parents and neighbors, as well as their homeowners insurance carriers and personal umbrella liability insurance carriers, after she nearly

12

drowned in a lake next to her parents' home. *Id.* at 439, 442 N.W.2d at 28. One of the questions addressed by the court in *Shannon* was "whether a family member exclusion provision can be waived to expand coverage." *Id.* at 450, 442 N.W.2d at 33. The court held that estoppel could not be used to expand the scope of coverage to "include coverage which was not provided for or was excluded from the contract." *Id.* at 451, 442 N.W.2d at 33. Safeco argues that this language mandates the court to allow Safeco to raise any applicable exclusions, because a prohibition would impermissibly expand the scope of the Safeco policy beyond what was agreed upon by the Millers and Safeco.

Safeco's reliance on *Shannon* overlooks a significant fact distinguishing that case from the one at hand. Unlike Safeco, the insurance companies in *Shannon* expressly informed the policyholders of the policies' exclusions in advance of the injury. *See id.* at 456-57, 442 N.W.2d at 35. Thus, the insureds in *Shannon* were fairly notified of all exclusions before the injury occurred and therefore, they had an opportunity to seek more inclusive coverage. Because the Millers were not notified of any of the policy's exclusions until after the loss to the residence, they were not afforded such an opportunity.

Second, Safeco claims that *Kozlik* does not apply as it is factually distinguishable from this case because (1) *Kozlik* involved liability insurance while this proceeding involves property loss insurance; (2) the insured in *Kozlik* never received a copy of the policy while the Millers received a copy after the injury but before the claim was filed; and (3) unlike the insured in *Kozlik,* the Millers had ample to time to review the Safeco policy prior to making the claim for damages because they had previously purchased a nearly identical policy from Safeco. The court finds all of these arguments without merit.

The court finds Safeco's argument, that *Kozlik* is inapplicable because the insurance at issue

13

in that case was liability insurance as opposed to property loss insurance, to be a distinction without a difference. In both instances the court is addressing coverage under an insurance contract in which the insured was not informed of relevant exclusions before the injury or loss occurred. The court finds the fact that one policy deals with liability and the other with property loss to be inconsequential.

Safeco's attempt to distinguish *Kozlik* on the grounds that the Millers were provided with a copy of the policy after they discovered the loss, while the insured in *Kozlik* never received a copy of the policy because he died, also fails under scrutiny. As the public policy reasoning in *Kozlik* demonstrates, for an insurer to rely on a policy exclusion, those exclusions must be made known to the insured at the date of injury–*not* the date the insured files a claim. 268 Wis.2d 491, ¶15. The purpose of providing an insured with relevant exclusions prior to injury or loss is to provide the insured an opportunity to seek an insurance policy which would provide coverage. *Id.* Allowing an insurance company to assert exclusions that were unknown to an insured at the time of injury but before filing a claim does not provide an insured with an opportunity to seek out other coverage options. *See id.*

Safeco also attempts to distinguish *Kozlik* on the basis that the Millers had previously purchased a similar policy from Safeco, and that therefore, unlike the plaintiff in *Kozlik*, had already received a copy of a very similar, if not identical policy, which listed any relevant exclusions. This is simply an inaccurate reading of the facts in *Kozlik*. To the contrary, the insured in *Kozlik* had previously been issued *nine* policies from the defendant/insurer, each containing the same personal accident insurance clause that was at issue in the case. *Kozlik,* 268 Wis.2d 491, ¶3. The *Kozlik* court held that notice of the coverage exclusions could not be established by these prior policies because

14

each prior policy "constituted a complete and distinct contract." *Id.,* ¶16. Certainly, if nine prior policies are insufficient to establish notice of coverage exclusions, the fact that the Millers were previously issued one Safeco policy for another home is also insufficient to establish notice of coverage exclusions. In accordance therewith, the plaintiffs' motion to prohibit the defendant from raising any potentially relevant exclusions will be granted.

## IV. Conclusion

In conclusion, and for all the foregoing reasons, the court concludes that an issue of fact remains as to whether the water and mold damage to the residence is a "loss[] occurring during the policy period," rendering the court unable to determine as a matter of law on motion for summary judgment that the policy initially granted coverage for the loss. Additionally, the court concludes that, should the plaintiffs establish an initial grant of coverage for the damage, the defendant is precluded from raising any relevant exclusions because the plaintiffs were not made aware of such exclusions before the loss to the residence occurred.

**NOW THEREFORE IT IS ORDERED** that the plaintiffs' motion for summary judgment be and hereby is **DENIED** in part and **GRANTED** in part;

**IT IS FURTHER ORDERED** that on the 15th of October 2007 at 9:30 a.m. the court will conduct a scheduling conference in order to discuss with the parties the further processing of this case.

**SO ORDERED** this 27th day of September, 2007, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge